**TRANSPORTATION LEASING CO., Petitioner,**

v.

**DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.**

**Nos. 92–AA–248, 92–AA–627.**

District of Columbia Court of Appeals.

Argued Jan. 29, 1997.

Decided March 13, 1997.

Stephen P. Zachary, Washington, DC, for petitioner.

Charles F.C. Ruff, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief, for respondent.

Before FERREN, FARRELL, and REID, Associate Judges.

FERREN, Associate Judge:

Transportation Leasing Co. seeks reversal of an order awarding worker's compensation benefits to one of its former employees for a "scheduled" injury to the arm. The company argues that because the claimant raised only one issue before the hearing examiner—an alleged injury to the neck and back resulting in an "unscheduled" wage loss—the company had no notice of a claim for a scheduled loss, and thus could not have been expected to defend against such a loss and, in any event, did not have an opportunity to do so. The company, therefore, asks for reversal. We agree with the company's position and remand the case for further proceedings.

**I.**

In October 1984, Donald R. Williams worked as a bus driver for Greyhound Lines, Inc. (which became Transportation Leasing Co. sometime in 1987). In the course of his duties, he was involved in an accident and suffered an injury to his neck and shoulder.

Williams went for treatment at Sinai Hospital, which referred him to Dr. Lawrence Hornick. Dr. Hornick treated Williams several times and, in November 1984, found him fit to return to work.

Two years later, in October 1986, Williams returned to Dr. Hornick complaining of a flare-up of pain in his neck and left shoulder. Again Dr. Hornick treated Williams for approximately a month, at the end of which the doctor found him completely asymptomatic. Dr. Hornick could find no evidence of trauma, or any reason for the pain, other than the 1984 accident. Williams next saw Dr. Hornick in June 1987 and again in November 1988. At this last visit, the doctor found that Williams' pain apparently had radiated from the neck and spread to the shoulder. Again, Dr. Hornick found no evidence of any trauma or cause other than the 1984 accident. The doctor concluded that he could do nothing more for Williams and opined that Williams had suffered—apparently as a result of the 1984 accident—a 19% impairment of the neck and a 17% impairment of the left shoulder.

Meanwhile, in March 1987, Williams had left Transportation Leasing for non-disability related reasons. He worked at various jobs, ultimately finding employment as a chauffeur but earning less than he had as a bus driver. Williams filed a worker's compensation claim in December 1989.

Pursuant to Office of Worker's Compensation (OWC) regulations, both parties submitted prehearing statements concerning the claim and issues presented. *See* 7 DCMR § 222 (1986). A prehearing conference was held on March 7, 1991, at which the parties identified the contentions and defenses they would argue before the hearing examiner, as well as the witnesses each side might call and the documents they might present. An OWC hearing examiner conducted a hearing on May 21, 1991. Williams alone testified in support of his claim; Transportation Leasing declined to call any witness (having identified several potential witnesses in its prehearing statement).

At the hearing, the examiner incorporated the prehearing conference into the record and defined the issues presented. Transportation Leasing accordingly argued that Williams had filed his claim after the statute of limitations had expired; that Williams could not prove any current neck or back injury; that any current injury could not, in any event, be shown to relate to the 1984 injury; and that Williams had voluntarily limited his income by leaving Transportation Leasing for reasons unrelated to any injury.

On November 29, 1991, the hearing examiner issued a Compensation Order specifying that the claim had been filed on time, that Williams had suffered a permanent partial disability to his neck and upper left extremity, and that the disability had resulted from the work-related accident. The examiner agreed with Transportation Leasing, however, that Williams had voluntarily limited his income and, therefore, could not claim wage loss benefits as a result of an unscheduled injury to his neck and back.

The hearing examiner then ruled, nonetheless, for Williams. The examiner determined that there was sufficient evidence to prove a claim for permanent partial disability of a "scheduled" body part, the upper left extremity (arm). *See* D.C.Code § 36–308(3)(A) (1993 Repl.). Citing this court's decision in *Smith v. District of Columbia Dep't of Employment Servs.*, 548 A.2d 95 (D.C.1988), the hearing examiner ruled that a claimant should receive compensation for a scheduled loss regardless of a voluntary limitation on income. The examiner then awarded Williams compensation under § 36–308(3)(A) for a 17% permanent partial disability of his left arm and shoulder. Because Transportation Leasing has exhausted administrative remedies without obtaining relief, its petition for review is now ripe for our consideration.

## II.

On appeal, Transportation Leasing has presented one issue: it says it received inadequate notice that it might have to pay for a scheduled injury.[1] The company main-

---

1. We therefore do not consider whether the hearing examiner properly resolved the statute of limitations issue, the voluntary limitation of income question, or the compensability of a scheduled loss for a claimant who has voluntarily limited his or her income.

tains that the hearing must be governed by the prehearing conference order. That order bears the following language above the signature block for claimant's counsel, employer's counsel, and the prehearing conference hearing examiner:

> THIS PRE–HEARING CONFERENCE ORDER HAS BEEN FORMULATED AFTER CONFERENCE AT WHICH COUNSEL FOR THE RESPECTIVE PARTIES HAVE APPEARED IN PERSON. REASONABLE OPPORTUNITY HAS BEEN AFFORDED COUNSEL FOR CORRECTIONS OR ADDITIONS PRIOR TO SIGNING. HEREAFTER, THE PRE–HEARING CONFERENCE ORDER SHALL CONTROL THE COURSE OF THE HEARING AND MAY NOT BE AMENDED EXCEPT BY FURTHER ORDER OF THE EXAMINER.

Under "Statement of Claim" the order lists "[p]ermanent partial disability benefits due to wage loss 12/30/89."

Transportation Leasing argues that only an unscheduled injury entitles a claimant to "wage loss" benefits, because a scheduled injury by its very nature provides relief at a set rate regardless of actual wage loss. D.C.Code § 36–308(3)(V); *Smith*, 548 A.2d at 100–02. Accordingly, says the company, because the prehearing conference order provided no notice that the hearing examiner might award compensation for a scheduled injury, the company had every expectation that the only issue would be Williams' claim for an unscheduled injury.

"We have held that '[i]n general, an individual is entitled to fair and adequate notice of administrative proceedings that will affect his [or her] rights, in order that he [or she] may have an opportunity to defend his [or her] position.'" *Ridge v. Police & Firefighters Retirement and Relief Bd.*, 511 A.2d 418,

424 (D.C.1986) (alterations in original) (quoting *Carroll v. District of Columbia Dep't of Employment Servs.*, 487 A.2d 622, 623 (D.C. 1985)). We have observed, moreover, that this notice guarantee has its "'roots in constitutional due process.'" *Abia–Okon v. District of Columbia Contract Appeals Bd.*, 647 A.2d 79, 84 (D.C.1994) (quoting *Ammerman v. District of Columbia Rental Accommodations Comm'n*, 375 A.2d 1060, 1062 (D.C. 1977)). We also have stressed that this notice requirement embraces the proposition that an agency "may not change theories in midstream without affording reasonable notice of the change." *Arthur v. District of Columbia Nurses' Examining Bd.*, 459 A.2d 141, 145 (D.C.1983) (citing *Rodale Press, Inc. v. Federal Trade Comm'n*, 132 U.S.App. D.C. 317, 321, 407 F.2d 1252, 1256 (1968)). Nonetheless, the "'requirements of procedural due process are met if upon review the court is satisfied that a complainant was given adequate opportunity to prepare and present his [or her] position to the [hearing examiner] and that no prejudice resulted from the originally deficient notice.'" *Ridge*, 511 A.2d at 424 (first alteration in original) (quoting *Watergate Improvement Associates v. Public Serv. Comm'n*, 326 A.2d 778, 786 (D.C.1974)). We therefore must decide whether Transportation Leasing received adequate notice and, if not, whether the lack of notice resulted in prejudice.

We agree with Transportation Leasing that it received inadequate notice that a scheduled award might be at issue. The language of the prehearing conference order characterized the claim exclusively as a "wage loss"; the order contained no language referring, in the alternative, to a possible scheduled loss under § 36–308(3)(V). Furthermore, nearly all the argument and documentation submitted by both sides during the hearing dealt with the issue of an unscheduled injury to the neck and spine.[2]

---

**2.** It is true that the November 17, 1988 medical report of Dr. Hornick, submitted as Claimant's exhibit 2a, states that Williams sustained a permanent reduction in the use of his left shoulder of 17%. It is also true that Williams did refer in his hearing testimony to pain in his shoulder as well as in his neck. The question, however, is not whether sufficient evidence supports the hearing examiner's findings and conclusions but

whether Transportation Leasing received adequate notice to inform the company of all the claims it would have to defend. Thus, even if the examiner had raised the scheduled injury issue for consideration at the hearing, Transportation Leasing still would have been entitled, at the least, to a continuance to assemble and present the necessary evidence to counter the new claim. *See, e.g., Rodale Press, Inc.*, 132 U.S.App. D.C. at

◼

◼ This lack of notice that the examiner would consider a scheduled loss substantially prejudiced Transportation Leasing in the preparation of its defense. The company asserted in its brief and at oral argument that, had it known of the possibility of an award for a scheduled injury, it would have called as a witness an independent medical examiner to rebut Dr. Hornick's testimony about Williams' claimed disabilities. This assertion not only inherently makes sense but also is particularly credible in light of the company's prehearing submission indicating it would call an independent medical examiner as a witness. At the hearing, however, the company called no witnesses, presumably because it had been assured, through the prehearing conference and accompanying order, that Williams intended to press only an unscheduled wage loss claim, and thus the company believed it could rely entirely on the legal defense that Williams had voluntarily limited his income.

### III.

Because Transportation Leasing did not receive adequate pre-hearing notice of the possibility of an award of a scheduled injury, and because this lack of notice prejudiced the company's defense, we must reverse the compensation award and remand the case to the Director for return to the Office of Worker's Compensation for further proceedings consistent with this opinion.

*So ordered.*

322, 407 F.2d at 1257 (remanding for agency to conduct second hearing on new theory).