# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CA-00073-SCT

*KARMJIT S. VIRK d/b/a GAS PLUS*

*v.*

*MISSISSIPPI DEPARTMENT OF REVENUE*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/12/2012 |
| TRIAL JUDGE: | HON. PATRICIA D. WISE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JAMES G. McGEE, JR. |
| ATTORNEYS FOR APPELLEE: | JON F. CARMER, JR. |
| | JAMES L. POWELL |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 03/06/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., LAMAR AND CHANDLER, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     Karmjit Virk appealed an increase in his tax liability to the Mississippi Department of Revenue's Board of Review. When Virk failed to appear at his Board of Review hearing, his appeal was involuntarily withdrawn. Virk's appeals to the Board of Tax Appeals and the Hinds County Chancery Court both were dismissed. Finding no error, we affirm the decisions of the Board of Review, the Board of Tax Appeals, and the Hinds County Chancery Court.

**FACTS AND PROCEDURAL HISTORY**

¶2.     The Mississippi Department of Revenue (MDOR) "is the primary agency for collecting tax revenues that support state and local governments in Mississippi."[1] In 2010, MDOR audited Karmjit Virk (Virk) and assessed him $8,679 in individual income taxes for 2008 and 2009, and $67,933 in sales taxes for August 1, 2007, through December 31, 2010.[2] Two weeks after the assessments were issued, Virk notified MDOR that he was represented by his certified public accountant, Michael Mahoney.[3]

¶3.     Virk timely appealed the assessments, and his hearing before the Board of Review was scheduled for October 13, 2011.[4,5] MDOR informed Mahoney of the hearing date by letter dated August 18, 2011.[6] Between August 18, 2011, and October 7, 2011, the parties made no attempt to communicate with each other. On October 7, 2011, Latasha Holt, a

---

[1] http://www.dor.ms.gov/ (last visited March 4, 2014). MDOR is created by Section 27-3-19 of the Mississippi Code. Miss. Code Ann. § 27-3-19 (Rev. 2013). Its specific responsibilities and powers are set out in Section 27-3-31. Miss. Code Ann. § 27-3-31 (Rev. 2013).

[2] Virk owns Gas Plus, a convenience store located in Jackson, Mississippi. The assessments were issued on June 28, 2011.

[3] Virk executed a Power of Attorney and Declaration of Representation form with MDOR on July 12, 2011, naming Michael Mahoney, a certified public accountant, as his representative.

[4] The Board of Review is created by Section 27-77-3 of the Mississippi Code. Miss. Code Ann. § 27-77-3 (Rev. 2010).

[5] The Board of Review hears appeals from taxpayers regarding tax assessments, refund denials, and tag penalty waiver denials that are issued by MDOR. Miss. Code Ann. § 27-77-5(1) (Rev. 2010).

[6] Mahoney actively represented Virk until at least the end of August of 2011, considering that on August 22, 2011, Mahoney asked for and paid for copies of Virk's August 2007 to 2010 sales tax returns.

MDOR employee, called Mahoney to remind him of Virk's hearing, and Mahoney informed her that he no longer represented Virk. Holt then called Virk directly. Virk claims that, during this phone call, he asked for his hearing date to be postponed, and that Holt denied his request.[7]

¶4. Virk did not attend his hearing on October 13, 2011, nor did he submit his position to the Board of Review "in writing or by electronic transmission." The Board of Review found that he had withdrawn his appeal involuntarily and noted this finding in its minutes.[8] Virk was informed by letter dated January 12, 2012.[9] Three months later, Virk appealed to the Board of Tax Appeals. MDOR responded by filing a motion to dismiss, alleging that "[Virk's] appeal was properly treated as involuntarily withdrawn . . . and that the assessmentst that are the basis of the appeal are final and not subject to further review." The

---

[7]Virk claims that he could not attend the hearing as scheduled for medical reasons but "admits that he did not specifically describe the medical condition" during his phone conversation with Holt, nor did he make a written request for a continuance.

[8]*See* Miss. Code Ann. § 27-77-5(2) (Rev. 2010):

> the taxpayer or his designated representative shall attend the hearing unless a request is made to, and granted by, the board of review to allow the taxpayer to submit his position in writing or by electronic transmission in lieu of attendance. Failure of the taxpayer or his designated representative to attend a hearing or to submit his position in writing or by electronic transmission by the date specified by the board of review or by the hearing date, if no date was specified, shall constitute a withdrawal of the appeal.

[9]*See* Miss. Code Ann § 27-77-5(8) (Rev. 2010) (stating "[i]f the withdrawal of appeal is involuntary, the administrative appeal body from whom the appeal is being withdrawn shall note on its minutes the involuntary withdrawal of the appeal and the basis for the withdrawal").

Board of Tax Appeals agreed with MDOR and issued an order granting MDOR's motion to dismiss.

¶5.     Virk appealed the Board of Tax Appeals order to the Hinds County Chancery Court, arguing that "the Board of Review's decision to not grant a continuance and its subsequent involuntary withdrawal of his appeal was arbitrary and capricious . . . [and that] the Board of Tax Appeals ['] decision to dismiss his appeal was improper." MDOR countered that the chancery court did not have jurisdiction to hear the appeal because Virk had failed to provide the required surety bond, and the chancery court was statutorily prohibited by Section 27-77-5(8) of the Mississippi Code from reviewing an involuntarily withdrawn appeal. The chancery court held a hearing on December 4, 2012, that focused on whether Virk had to comply with the surety-bond requirement. On December 12, 2012, the chancery court granted MDOR's motion to dismiss, finding that "[Section 27-77-5(8)] is clear. If a tax assessment is involuntarily or voluntarily withdrawn, there shall be no further review of that tax assessment."[10] Virk timely appealed to this Court, challenging the chancery court's tax

---

[10]The chancery court declined to address Section 27-77-7(3)'s bond requirement, stating that

> [T]his Court shall not go into the details of Virk's appeal, meaning Virk's *Motion to Forego Surety Bond Requirement*, or the like, because such would be reviewing Virk's tax assessment. At this point the only option this court has is to dismiss Virk's *Petition* to this Court because Section 27-77-5(8) allows him no further review or relief.

*See* Miss. Code Ann. § 27-77-7(3) (Rev. 2010) (stating "[a] petition filed by a taxpayer under subsection (1) of this section that appeals an order of the Board of Tax Appeals affirming a tax assessment shall be accompanied by a surety bond approved by the clerk of the court in a sum half the amount in controversy, conditioned to pay the judgment of the court").

assessment."[11]  Virk timely appealed to this Court, challenging the chancery court's interpretation of Section 27-77-5 of the Mississippi Code.

## STANDARD OF REVIEW

¶6.  Judicial review of an administrative agency's decision is limited.[12]  Typically, "trial courts and appellate courts will reverse the decision of an administrative agency only if the decision (1) was unsupported by substantial evidence; (2) was arbitrary and capricious; (3) was beyond the power of the administrative agency to make; or (4) violated the complaining party's statutory or constitutional right."[13]  However, an agency's interpretation of a governing statute is subject to *de novo* review as "[t]he ultimate authority and responsibility

---

[11]The chancery court declined to address Section 27-77-7(3)'s bond requirement, stating that

> [T]his Court shall not go into the details of Virk's appeal, meaning Virk's *Motion to Forego Surety Bond Requirement*, or the like, because such would be reviewing Virk's tax assessment.  At this point the only option this court has is to dismiss Virk's *Petition* to this Court because Section 27-77-5(8) allows him no further review or relief.

*See* Miss. Code Ann. § 27-77-7(3) (Rev. 2010) (stating "[a] petition filed by a taxpayer under subsection (1) of this section that appeals an order of the Board of Tax Appeals affirming a tax assessment shall be accompanied by a surety bond approved by the clerk of the court in a sum half the amount in controversy, conditioned to pay the judgment of the court").

[12]*W.C. Fore v. Miss. Dep't of Revenue*, 90 So. 3d 572, 577 (Miss. 2012).

[13]*Id.* (internal quotations and citations omitted).

to interpret the law, including statutes, rests with this Court."[14]   The grant of a motion to interpret the law, including statutes, rests with this Court."[15] The grant of a motion to dismiss also is subject to *de novo* review.[16]

**LAW AND ANALYSIS**

¶7.     The issues on appeal are whether Section 27-77-5 of the Mississippi Code prohibits an involuntary withdrawal of a tax appeal from being reviewed, whether Virk was denied due process, and whether the chancery court had jurisdiction to hear Virk's appeal.

**I.      Effect of Section 27-77-5**

¶8.     The focus of this appeal is Section 27-77-5 of the Mississippi Code.  Section 27-77-5 establishes a two-tier review process for tax appeals.[17]  Tier one is the Board of Review, and tier two is the Board of Tax Appeals.[18]  All tax appeals begin with the Board of Review and are disposed of in one of three ways: order, voluntary withdrawal, or involuntary withdrawal.[19]  The parties dispute whether an involuntary withdrawal at the Board of Review stage can be appealed to the Board of Tax Appeals.  The authority of the Board of Tax Appeals and the effect of an involuntary withdrawal are addressed in subsections 4 and 8 of

---

[14]*Id.*

[15]*Id.*

[16]***King v. Bunton***, 43 So. 3d 361, 363 (Miss. 2010).

[17]Miss. Code Ann. § 27-77-5 (Rev. 2010).

[18]Miss. Code Ann. § 27-77-5(1-3) (Rev. 2010).

[19]Miss. Code Ann. § 27-77-5(4-7) (Rev. 2010).

6

Section 27-77-5, respectively. Subsection 4 states:

> Any taxpayer aggrieved by an order of the [B]oard of [R]eview affirming a tax assessment, the denial of a refund claim, or the denial of a waiver of tag penalty, and who wishes to contest the order shall, within sixty (60) days from the date of the order of the [B]oard of [R]eview being contested, file an appeal to the Board of Tax Appeals.[20]

Subsection 8 states:

> At any time after the filing of an appeal to the [B]oard of [R]eview or from the [B]oard of [R]eview to the Board of Tax Appeals under this section, an appeal can be withdrawn. Such a withdrawal of an appeal may be made voluntarily by the taxpayer or *may occur involuntarily as a result of the taxpayer failing to appear at a scheduled hearing, failing to make a written submission or electronic transmission in lieu of attendance at a hearing* by the date specified or by the hearing date, if no date was specified, or by any other act or failure that the [B]oard of [R]eview or the Board of Tax Appeals determines represents a failure on the part of the taxpayer to prosecute his appeal . . . . If the withdrawal of appeal is involuntary, the administrative appeal body from whom the appeal is being withdrawn shall note on its minutes the involuntary withdrawal of the appeal and the basis for the withdrawal. Once an appeal is withdrawn, whether voluntary or involuntary, the action from which the appeal was taken, whether a tax assessment, a denial of refund claim, a denial of waiver of tax penalty, or an order of the [B]oard of [R]eview, shall become final and not subject to further review by the [B]oard of [R]eview, the Board of Tax Appeals or a court.[21]

¶9. If Section 27-77-5 is unambiguous, its plain meaning should be applied but, if it is ambiguous, rules of statutory construction should be used to determine its legislative intent.[22] Virk argues that since Section 27-77-5 "does not expressly bar further review of denial of a continuance and resultant involuntary withdrawal on appeal" the statute is ambiguous and that further review of such decisions "is supported by legislative history, an *in pari materia*

---

[20]Miss. Code Ann. § 27-77-5(4) (Rev. 2010).

[21]Miss. Code Ann. § 27-77-5(8) (Rev. 2010) (emphasis added).

[22]***Buffington v. Miss. State Tax Comm'n***, 43 So. 3d 450, 454 (Miss. 2010).

7

analysis of related statutes, and equity jurisdiction of chancery courts." MDOR argues that Section 27-77-5 is unambiguous and "makes it clear that the Board of Review's 'denial of a continuance and involuntary withdrawal flowing therefrom' is not a reviewable matter." We agree with MDOR.

¶10. Section 27-77-5(8) specifically states that an appeal can be involuntarily withdrawn if a taxpayer fails to attend his hearing[23] and that "[o]nce an appeal is withdrawn, whether voluntary or involuntary, the action from which the appeal was taken . . . shall become final and not subject to further review by the [B]oard of [R]eview, the Board of Tax Appeals or a court."[24] As such, there was no statutory authority to hear Virk's appeal in the Board of Tax Appeals or the Hinds County Chancery Court. In the words of the chancery court, "[f]ailing to attend the hearing sealed [Virk's] fate and made his assessment final."

¶11. Additionally, subsection 8 requires an involuntary withdrawal to be documented in the Board of Review's minutes, as opposed to an order, and subsection 4 authorizes the Board of Tax Appeals to hear appeals only from Board of Review orders.[25] There was no Board of Review order in this case. We find that Section 27-77-5 is unambiguous and that a finding of involuntary withdrawal is not appealable to the Board of Tax Appeals.

## II.     Due Process

---

[23]*See also* Miss. Code Ann. § 27-77-5(2) (stating "[f]ailure of the taxpayer or his designated representative to attend a hearing or to submit his position in writing or by electronic transmission by the date specified by the [B]oard of [R]eview or by the hearing date, if no date was specified, shall constitute a withdrawal of the appeal").

[24]Miss. Code Ann. § 27-77-5(8) (Rev. 2010).

[25]Miss. Code Ann. § 27-77-5(4, 8) (Rev. 2010).

¶12. At its heart, Virk's appeal is a due-process claim. He argues that a denial of a continuance request can amount to a denial of due process and that, therefore, involuntarily withdrawn appeals should be subject to review. This argument is procedurally barred, as Virk failed to raise it before the chancery court[26] and failed to serve a copy of his appellate brief on the Attorney General.[27] Procedural bar notwithstanding, this argument also is without merit.

¶13. "Generally, due process requires notice and a meaningful opportunity to be heard." *Akins v. Miss. Dep't of Rev*., 70 So. 3d 204, 208 (Miss. 2011) (citing *Vincent v. Griffin*, 872 So. 2d 676, 678 (Miss. 2004)). It is undisputed that Virk received both. Virk received notice when MDOR notified his representative of his hearing date by letter dated August 18, 2011.[28] He also had an opportunity to be heard at his October 13, 2011, hearing but chose not to attend.

¶14. Virk does not dispute that he received notice and a hearing or that he failed to attend his hearing. Rather, he contends "that the MDOR arbitrarily and capriciously denied his request for a continuance" and that such a denial constitutes a due-process violation. Virk

---

[26]*See In re D.O.*, 798 So. 2d 417, 423 (Miss. 2001) (stating "[t]hat although an issue is constitutional in nature, it is not absolved from the general rule that objections must be raised at the trial level").

[27]*See* Miss. R. App. P. 44(a) (stating "[i]f the validity of any statute . . . is raised in the Supreme Court or the Court of Appeals, and the state, municipal corporation, or governmental body which enacted or promulgated it is not a party to the proceeding, the party raising such question shall serve a copy of its brief, which shall clearly set out the question raised, on the Attorney General, the city attorney, or other chief legal officer of the governmental body involved") and *In re D.O.*, 798 So. 2d at 423.

[28]*See* Miss. Code Ann. § 27-77-1(o) (Rev. 2010).

cites three cases from other jurisdictions to support his argument that the "denial of a requested continuance can constitute an effective denial of due process, even in the context of administrative hearings." Two of the cases do not support Virk's argument,[29] and the third case, ***King v. District of Columbia Water and Sewer Authority***, 803 A.2d 966 (D.C. 2002), is distinguishable.

¶15.    In ***King***, an elderly woman in poor health missed her hearing before the District of Columbia Water and Sewer Authority due to inclement weather.[30]  She claimed to have called the Water and Sewer Authority the morning of her hearing and sent a letter the next day, requesting a continuance.[31]  The Water and Sewer Authority denied her continuance request and she appealed.[32]  The District of Columbia Court of Appeals reversed, holding that "a request for a continuance when attendance at a hearing would involve serious risk to . . . health should not be denied."[33]  Unlike the petitioner in ***King***, Virk never requested a continuance in writing.  Additionally, in ***King***, the petitioner's reasons for her request were

---

[29]*See **State v. Crank***, 666 S.W.2d 91 (Tex. 1984) (holding administrative board's denial of a petitioner's continuance request was not an abuse of discretion when the petitioner already had received two continuances, had been notified of the hearing a month in advance, and had waited to fire his attorney until the morning of the hearing), and ***Ungar v. Sarafite***, 376 U.S. 575, 588-91, 84 S. Ct. 841, 11 L. Ed. 2d 921 (1964) (holding the denial of a petitioner's continuance request did not deny the petitioner due process when the petitioner was given five days' notice of the hearing, the issues were limited and clear-cut, and the petitioner did not request the continuance until the day of the hearing).

[30]***King***, 803 A.2d at 967.

[31]*Id.*

[32]*Id.* at 967-68.

[33]*Id.* at 969 (quoting ***State Bd. of Med. Educ. & Licensure v. Williams***, 172 Pa. Super. 448, 94 A.2d 61, 62 (1953) (internal quotations omitted).

10

substantiated and uncontested, whereas no evidence was presented to justify Virk's alleged request.

¶16.    Virk also argues that Holt did not have authority to deny his continuance request and that his request should have been considered by the Chairman of the Board of Review or the Commissioner, based on Section 35-I-1.01 of the Mississippi Administrative Code. The pertinent part of Section 35-I-1.01 states:

> a. A request for a continuance of the hearing will be routinely granted if the request is received within ten (10) days after the notice of the hearing is mailed. If the request for continuance is received beyond ten (10) days from the date the notice of hearing is mailed, then the determination whether to continue the hearing will be made by the Chairman of the Review Board.
>
> b. The Department of Revenue will not be responsible for delay in the delivery of mail.[34]

However, Virk's argument fails because he never requested a continuance. His alleged conversation with Holt does not constitute a "continuance request," and Virk made no other effort to have his hearing date postponed. In fact, he made no effort to request a continuance, as his conversation with Holt was initiated by her, not him. The chairman cannot be expected to consider requests that are not presented to the Board of Review.

¶17.    Additionally, even if Virk could not attend his hearing, Section 27-77-5(2) allows a taxpayer to make a request "to submit his position in writing or by electronic transmission in lieu of attendance."[35] Virk failed to take advantage of this alternative. In light of the foregoing, we find no violation of Virk's due-process rights.

---

[34]Miss. Admin. Code 35-I-1.01 (2013).

[35]Miss. Code Ann. § 27-77-5(2) (Rev. 2010).

11

### III. Chancery court's jurisdiction

¶18. Finally, Virk argues that Section 27-77-5 divests the chancery court of equity jurisdiction in violation of the Mississippi Constitution. Like Virk's due-process argument, this argument is procedurally barred, as Virk failed to raise it before the chancery court[36] and failed to serve a copy of his appellate brief on the Attorney General.[37] Procedural bar notwithstanding, this argument also fails on the merits.

¶19. Virk is correct that "chancery courts do have subject matter jurisdiction over appeals from tax assessments" pursuant to the Mississippi Constitution and that jurisdiction cannot be divested by statute.[38] But a chancery court's appellate jurisdiction is governed by statute, and "a chancery court has no authority to create a right of appeal from an administrative agency in the absence of clear statutory authority."[39] This issue is without merit.

### CONCLUSION

¶20. Karmjit Virk challenged two tax assessments issued by the Mississippi Department of Revenue. His appeal was withdrawn involuntarily and the assessments became final because of his failure to appear at the hearing before the Board of Review. Virk's appeals to the Board of Tax Appeals and the Hinds County Chancery Court were dismissed. Finding no error, we affirm the decisions of the Board of Review, the Board of Tax Appeals, and the Hinds County Chancery Court.

---

[36] *See In re D.O.*, 798 So. 2d at 423.

[37] *See* Miss. R. App. P. 44(a) and *In re D.O.*, 798 So. 2d at 423.

[38] *Khurana v. Miss. Dep't of Revenue*, 85 So. 3d 851, 855 (Miss. 2012).

[39] *Khurana*, 85 So. 3d at 855 (Miss. 2012).

12

¶21.   **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**